IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GREGORY K. WHITT                                                    PLAINTIFF

   v.                          Civil No.   15-5224

DEPUTY SHAWN WILSON;
and DEPUTY JOSEF HUDGENS                                        DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

   This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff

proceeds *pro se* and *in forma pauperis.*

   Plaintiff is currently incarcerated in the Cummins Unit of the Arkansas Department of

Correction (ADC).  The events that are the subject of this lawsuit arose on June 15, 2013, when

Defendants responded to a domestic disturbance call at a residence occupied by the Plaintiff

and his fiance, Toni Cruse.  Plaintiff was ultimately arrested and charged with various offenses.

He maintains that his house was unlawfully entered, excessive force was used against him

during the course of the arrest, and Deputy Hudgens made a false statement to an Arkansas

Department of Human Services (DHS) worker that contributed to his losing custody of his

three minor children.

   Defendants filed a summary judgment motion (Doc. 58).  A summary judgment hearing

was held on January 23, 2017, to allow Plaintiff to testify in response to the motion.

Defendants filed a supplemental summary judgment motion (Doc. 68).  Plaintiff was given an

opportunity (Doc. 72) to respond the supplemental motion but did not do so.

-1-

At the hearing, Plaintiff asked that additional information be obtained from a state court custody case. Information was obtained (Doc. 71) and filed under seal.[1]

## 1. Background

On June 15, 2013, Plaintiff was involved in a domestic dispute. The police were called and Deputy Shawn Wilson, Deputy Josef Hudgens, Corporal Hammersla, Corporal Strain, and Corporal Whelchel responded. Deputy Hudgens and Deputy Wilson were the first officers on the scene. The police were told that Plaintiff's fiance, Toni Cruse, was at the property and had been injured in a domestic dispute-- her left eye and her upper lip were swollen.

Plaintiff testified that Cruse had taken five Xanax pills and had been drinking. To keep her from driving anywhere, he let the air out of her automobile tires. Between approximately 7:00 p.m. and 9:00 p.m, Plaintiff had four or five drinks. He testified he was not intoxicated but was emotional. He was wearing only boxers.

Plaintiff testified Cruse went to the front porch and pushed him off causing him to fall three to three-and-a-half feet to the ground. Plaintiff testified Cruse shoved him a second time and as he went over backward, he grabbed Cruse. When Cruse fell, she "busted" her eye on a stepping stone. Plaintiff testified he suffered injuries to his feet and legs from the fall.

Plaintiff testified he got Cruse up and cleaned her up. He then walked into the bedroom and Cruse began hitting him on the head. Plaintiff testified he went out to the backyard and Cruse asked him if he was going to sleep outside. Plaintiff testified that at this point, he saw blue lights coming and went into the house.

---

[1] Plaintiff also indicated pictures were admitted into evidence in Judge Zimmerman's court. Court staff contacted Judge Zimmerman's office and her court reporter and was not able to obtain any pictures. It was unclear at this late date who had the original exhibits; however, this Court was assured that at the time Plaintiff was given copies of all exhibits.

According to Deputy Hudgens, Cruse had placed a call to 911 and "disconnected after saying, 'He's coming back.'" *Defts' Ex.* A-1 at 5. Cruse reported the Plaintiff then took her phone. *Id.* Officers looked for the phone in the house and yard but could not locate it. *Id.*

Plaintiff testified that at 2:30 a.m., Deputy Wilson showed up at his back door. According to Plaintiff, Deputy Wilson, who had an assault rifle, was kicking on the metal french doors and ordering Plaintiff to come outside. Plaintiff testified he did not feel like doing it. When Deputy Wilson was knocking on the door, Plaintiff had a folding pocket knife that was clipped to his waist line or belt. He testified the blade was folded and he never opened it up. He further testified that when he was instructed to set it on the table, he did so. He stated he did not want to get into an argument. Plaintiff testified Deputy Wilson's shouting woke his 11 year old son , J.W.

According to Deputy Hudgens, Plaintiff was outside the house when they arrived and began cussing and screaming at Deputy Wilson and then ran in the back door of the house. *Defts' Ex.* A-1 at 2. Similarly, Deputy Wilson indicated Plaintiff was on the porch when he approached and disregarded orders to show his hands and come outside. *Id.* at 8. Deputy Wilson reported that he "informed Greg I would kick in the door and get him if he didn't come outside and explain his side of the story. Greg told me to 'f--- off' and 'to get off his property.'" When Deputy Wilson pulled out his taser, Plaintiff grabbed his 11 year old son, J.W., and forced him between himself and Deputy Wilson. *Id.* at 2 & 9.

Things calmed down after Corporal Hammersla came to the back door. Plaintiff testified he had a good rapport with Corporal Hammersla. Plaintiff testified he unlocked the door and reached through the door to shake Deputy Wilson's hand. Plaintiff also shook Deputy Hudgens' hand. When Plaintiff did so, Deputy Hudgens grabbed the Plaintiff by the right arm and pulled

-3-

him out the door. Plaintiff testified he was put belly down, Deputy Hudgens' knee was put on his back, and he was handcuffed. Plaintiff indicated his chest was bruised when he was yanked down. He testified he was black and blue all down his back and chest. He did not seek medical treatment because of these injuries.

Plaintiff testified he went through the house and woke the other children up and was transported to the Washington County Detention Center (WCDC). Plaintiff indicated that Deputy Hammersla got him some clothes so that when he arrived at the WCDC he was dressed.

According to Deputy Hudgens, Cruse reported that Plaintiff had hit her in the face with his fists several times and pulled her hair at least twice. *Defts' Ex.* A-1 at 3. Deputy Hudgens indicates Cruse's injuries were consistent with her statement. *Id.* Deputy Hudgens took photographs of her injuries. *Id.* He described her injuries as follows: "her right eye had a swollen area approximately 2 inches wide. Inside her upper lip was a cut approximately 1/4 of an inch." *Id.* Cruse was taken to Washington Regional Medical Center. *See also Id.* at 7 (supplemental report by Corporal Bruce Strain).

Plaintiff testified that he believed Deputy Hudgens advised the DHS that Plaintiff held a knife to his son's neck. When Plaintiff spoke to a Criminal Investigation Department Officer, he was told this claim was never made and that it was a very serious accusation.

Plaintiff was arrested and charged with endangering the life of a minor, domestic battery 3rd, false imprisonment, and interference with emergency communications. *Defts' Ex.* B-1 at 2. He spent just a single night in jail. *Defts' Ex.* A at ¶ 5. According to Deputy Hudgens, the arrest for domestic battery was warranted based on Cruse's statement and the "injuries apparent to her face." *Id.* at ¶ 6. He "believed the arrest to be appropriate under Arkansas law which allows a

warrantless arrest for a misdemeanor charge of Domestic Abuse when the abuse occurred within 4 hours of the contact and resulted in physical injury." *Id.*

> With respect to the remaining charges, according to Deputy Hudgens:

> Plaintiff was charged with Endangering the Welfare of a Minor because he used his minor son as a shield between himself and officers on the scene. Plaintiff was charged with False Imprisonment because he took car keys away from the victim of the domestic abuse, Toni Cruse, to keep her from leaving the premises. Plaintiff was charged with Interference with Emergency Communications because Toni Cruse reported that Whitt took her phone from her while she was on the phone line with a 911 operator.

*Defts' Ex.* A at ¶¶ 7-9.

Plaintiff was later charged with resisting arrest. *Defts' Ex.* C at 12-14. His three minor children, J.W., G.W., and T.W., were placed in the custody of the DHS. Plaintiff maintains the DHS attorney, Shallen Carrol, in a sworn statement, based on a report by Deputy Hudgens, stated that Plaintiff had held a knife to the throat of J.W. Plaintiff testified that a DHS worker told him that he would have gotten his children back if it were not for this statement.

On June 18, 2013, Deputy Thompson was dispatched to do a follow-up to photograph injuries Plaintiff claimed to have sustained from Cruse. *Defts' Ex.* A-1 at 11. Plaintiff did not mention any bruises on his back or chest. Instead, Plaintiff just showed Deputy Thompson the injuries to his feet and legs he said occurred when Cruse pushed him off the porch. Plaintiff had a bruise on his "left foot from his toes to his ankle covering approximately 1/3 of his foot." *Id.* Plaintiff also showed Deputy Thompson several scrapes on his legs from his knees down. *Id.* Plaintiff reported sustaining the injuries when Cruse pushed him off the steps of the front patio. *Id.* He reported that she shoved him a second time when he attempted to walk back up the steps, at which time he pulled her down with him. *Id.*

AO72A
(Rev. 8/82)

Plaintiff testified that at a DHS hearing, Deputy Hudgens said he never made the statement that Plaintiff had held a knife to his son's neck. This hearing took place approximately a month after the incident.

Eventually, all charges except endangering the life of a minor and resisting arrest were dismissed. Plaintiff was found guilty on these charges in the Elkins District Court on December 19, 2013. *Defts' Ex.* C. He appealed to the Washington County Circuit Court. *Id.* When Plaintiff went on trial in the Circuit Court, he was alleged to have tampered with the jury. *Defts' Ex.* D at 1. A mistrial was declared. Plaintiff was charged with jury tampering and on October 1, 2014, was convicted of that charge. *Id.* at 5-6. This is the conviction upon which he is currently incarcerated. *Id.* The endangering the welfare of a minor and resisting arrest were eventually nolle prossed. *Defts' Ex.* C.

At Plaintiff's request, the Court obtained copies of his appeals from the rulings giving custody of the three minor children to their mother. Whitt v. Arkansas Department of Human Services, et al, CV-14-6, 2014 Ark. App. 449, 441 S.W. 3d 449 (Ark. Ct. App. 2014); and Whitt v. Arkansas Department of Human Services, et al., CV-15-20, 2015 Ark. App. 293, 461 S.W. 3d 386 (Ark. Ct. App. 2015). The copies were placed under seal as Document 71. The opinions reveal that the court made the following findings regarding the night of June 15th: "Gregory and his girlfriend were drunk when the police arrived at their house; Gregory placed one of the children between him and the door to prevent the police from entering; and his girlfriend had a bloody lip." Whitt, 461 S.W. 3d at 387; see also Whitt, 441 S.W. 3d at 34.

## 2. Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  See McCleary v. ReliaStar Life Ins. Co., 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### 3.  Discussion

Defendants have moved for summary judgment arguing: (1) they were present in response to a call for help by a property resident and had probable cause to arrest the Plaintiff; (2) there is no evidence they violated Plaintiff's 5th (self incrimination), 8th (cruel and unusual punishment) rights; or 14th (equal protection and due process) Amendment rights; (3) Deputy Hudgens did not use excessive force against the Plaintiff; (4) they are entitled to qualified immunity; and (5) there is no basis for official capacity liability.

AO72A
(Rev. 8/82)

At the beginning of the hearing, Plaintiff clarified that he was only pursuing the following claims: (1) an excessive force claim against Deputy Hudgens; (2) a Fourth Amendment claim against Deputy Hudgens based on his reaching into the house and pulling Plaintiff out; and (3) a claim that Deputy Hudgens falsely told DHS that Plaintiff held a knife to his son's throat.  Plaintiff concedes the Defendants had probable cause to arrest him.

**(A).  Section 1983**

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. West v. Atkins, 487 U.S. 42 (1988); Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986).

**(B).  Excessive Force**

Deputy Hudgens contends the amount of force used was reasonable in light of the circumstances.  Further, he argues Plaintiff at most suffered *de minimus* injury.

"Claims that law enforcement officers used excessive force during an arrest or investigatory stop are analyzed under the Fourth Amendment's prohibition of unreasonable searches and seizures." Schoettle v. Jefferson County, 783 F.3d 855, 859 (8th Cir. 2015)(citing Graham v. Connor, 490 U.S. 386, 394-95 (1989)).  The Eighth Circuit in Schoettle wrote that:

> [w]hen determining whether unreasonable force was used, courts must give
> careful attention to the facts and circumstances of each particular case, including

-8-

the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Courts should not allow the 20/20 vision of hindsight to cloud the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. In other words, to comport with the Fourth Amendment, the force must have been objectively reasonable in light of the facts and circumstances confronting the officers at the time it was used. Courts should not consider the officers' subjective motivations when determining whether their use of force was reasonable under the Fourth Amendment.

Id. (internal quotation marks and citations omitted); see also Perry v. Woodruff County Sheriff Department by and through Barker, 858 F.3d 1141, 1145 (8th Cir. 2017).

Viewing the evidence in the light most favorable to Plaintiff, I conclude that under the circumstances, the amount of force used was objectively reasonable as a matter of law. Plaintiff retreated to the home when he saw officers were arriving. He refused all requests to exit the house. Minor children were in the home. Plaintiff had allegedly injured Cruse and she bore the physical evidence of injury. Plaintiff testified he was jerked outside the house, put on the deck belly down, a knee was placed on his back, and he was handcuffed. The use of force ceased when Plaintiff was handcuffed.

Video of Plaintiff in the back seat of the patrol car does not show any injury to the Plaintiff's chest. *Defts' Ex.* A-1 (Transport by Corporal Strain). Plaintiff did not mention any injury as a result of Deputy Hudgens' conduct when he was in the back of the patrol car, instead only asking that pictures be taken of his lip where he alleged Cruse had hit him. *Id.* When Deputy Thompson made the follow-up visit to take pictures of the injuries Plaintiff alleged were caused by Cruse, Plaintiff did not mention any injuries caused by Deputy Hudgens or ask that

-9-

pictures be taken of those injuries.  Deputy Hudgens is entitled to summary judgment on this claim.

### (C).  Entry into the Home

Defendants first note that they did not actually enter the home but instead merely pulled the Plaintiff out the back door.  Even if that is considered an entry of the home, they maintain it is justified by exigent circumstances.

In <u>Payton v. New York</u>, 445 U.S. 573 (1980), the Court held that, even if probable cause existed, a suspect should not be arrested in his house without an arrest warrant.  "It is well settled that the police may approach a residence and knock on the door for any legitimate reason.  Any demand, however, that the door be opened, and any subsequent entry into the residence to either search for evidence or to make an arrest, must be pursuant to a warrant or an exception to the requirement of a warrant."  <u>United States v. Smalls</u>, 617 F. Supp. 2d 1240, 1252 (S.D. Fla. 2008), <u>aff'd</u>, 342 F. Appx. 505 (11th cir. 2009).

In <u>McClish v. Nugent</u>, 483 F.3d 1231 (11th Cir. 2007), McClish did not contest that there was probable cause to arrest him.  *Id.* at 1239.  Instead, he argued, as Plaintiff does here, that the arrest was unconstitutional because the officer "was not armed with an arrest warrant when [he] pulled McClish from his home."  *Id.*  The Eleventh Circuit stated that there was neither consent nor exigent circumstances leaving the issue before it "whether Deputy Terry violated McClish's Fourth Amendment rights by reaching through McClish's open doorway to effect the arrest when McClish was standing near the doorway but fully within the confines of his home."  *Id.* at 1241.

-10-

The Eleventh Circuit noted that in Payton, the "Supreme Court drew a 'firm line' at the threshold of the home, explicitly observing that this 'threshold may not reasonably be crossed without a warrant.'" *Id.* (quoting Payton, 445 U.S. at 590).  The Eleventh Circuit concluded that "[t]he Fourth Amendment, as interpreted by *Payton* and its progeny, does not permit an officer to cross this constitutional line and forcibly remove a citizen from his home absent an exigency or consent." *Id.* at 1242; see also Minnesota v. Olson, 495 U.S. 91, 95 (1990)("The purpose of the [Payton] decision was not to protect the person of the suspect but to protect his home from entry in the absence of a magistrate's finding of probable cause"); cf. Duncan v. Storie, 869 F.2d 1100, 1102 (8th Cir. 1989)("If an individual voluntarily left the confines of his home . . . then the arrest was made in a public place").  It is clear Deputy Hudgens' conduct amounted to an entry of Plaintiff's home.

"The warrant requirement is suspended when--in the press of circumstances beyond a police officer's control--lives are threatened, a suspect's escape looms, or evidence is about to be destroyed." United States v. Duchi, 906 F.2d 1278, 1282 (8th Cir. 1990); see also United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996)(suggesting a reasonable officer would think an armed suspect who ran into a house when the police approached "presented a threat to the lives of the officers outside").  In United States v. Kulcsar, 586 F.2d 1283, 1287 (8th Cir. 1978), the Eighth Circuit found it appropriate to consider the following factors in determining whether exigent circumstances exist: (1) that a grave offense is involved; (2) that the suspect is reasonably believed to be armed; (3) that a clear showing of probable cause exists to believe the suspect committed the crime in question; (4) that there is a strong reason to believe the suspect is in the premises being entered; (5) that a likelihood exists that the suspect will escape if not

-11-

swiftly apprehended; and (6) that the entry, though not consented to, is made peaceably.  *Id.* (citing Dorman v. United States, 435 F.2d 385, 392-93 (D.D.C. 1970).

I note Deputy Hudgens was aware of the following when he reached in and pulled Plaintiff over the threshold: Cruse had reported being injured by the Plaintiff in a domestic disturbance; her injuries were observable and consistent with her statement; Plaintiff was being belligerent and uncooperative; there were three minor children in the home; at least one of the minor children had been disturbed by the incident and was present in the same area of the home as the Plaintiff; and Plaintiff appeared to have been drinking.  See United States v. Roberts, 824 F.3d 1145, 1147 (8th Cir. 2016)(finding exigent circumstances existed to enter the home when the door opened after a hard, knock--officers concern for their safety was not unreasonable).

Given the circumstances, I conclude exigent circumstances justified Deputy Hudgens' action of reaching across the threshold and pulling the Plaintiff out.  This is particularly true here where there were three minor children present without an adult in any condition to care for them.  Cf. Dennison v. Vietch, 550 F. Supp. 435, 440 (D. Minn. 1983)(exigent circumstances did not exist where there was no evidence officers were acting out of concern for the immediate welfare of the child).  Defendants are entitled to summary judgment on this claims.

**(D).  False Statement**

The audio of Deputy Hudgens speaking with a DHS representative establishes that he did not say that the Plaintiff held a knife to his son's neck.  Rather, Deputy Hudgens stated that Plaintiff had placed J.W. between the police officers and himself but never threatened J.W. Similarly, Plaintiff states that at the child custody hearing, Deputy Hudgens testified that he did not tell the DHS that Plaintiff held a knife to J.W.'s neck.  Deputy Hudgens' statements were

AO72A
(Rev. 8/82)

consistent and there is no evidence he told DHS that Plaintiff held a knife to J.W.'s neck.  There

is no evidence suggesting Deputy Hudgens made the false statement allegedly attributed to him.

Deputy Hudgens is entitled to summary judgment on this claim.

### (E).  Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendants are

entitled to qualified immunity.  See, e.g., Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009)

(unless the facts make out a violation of a constitutional right the Defendant is entitled to

qualified immunity).

### (F).  Official Capacity Liability

Plaintiff has asserted official capacity claims against the Defendants.  Defendants

maintain there is no proof, or even any allegation of, any unconstitutional county policy or

custom that was the moving force behind any alleged violation of Plaintiff's constitutional

rights.  I agree.

Official capacity suits "generally represent only another way of pleading an action

against an entity of which the officer is an agent." Monell v. Dep't of Social Servs., 436 U.S.

658, 694 (1978).  An official capacity suit requires proof that a custom or policy of the

governmental entity was the moving force behind the constitutional violation.  Kentucky v.

Graham, 473 U.S. 159, 166 (1985).

"There are two basic circumstances under which municipal liability will attach: (1)

where a particular municipal policy or custom itself violates federal law, or directs an employee

to do so; and (2) where a facially lawful municipal policy or custom was adopted with

'deliberate indifference' to its known or obvious consequences." Moyle v. Anderson, 571 F.3d

AO72A
(Rev. 8/82)

814, 817-18 (8th Cir. 2009) (citation omitted); <u>Jenkins v. County of Hennepin</u>, 557 F.3d 628, 633 (8th Cir. 2009)(Plaintiff must point to "any officially accepted guiding principle or procedure that was constitutionally inadequate").  Plaintiff has made no such allegations.

### 4.  Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (Docs. 58 & 68) be **GRANTED** and this case be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

/s/ *Erin L. Wiedemann*

HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE

-14-